IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| EDWARD LOPEZ, § § Plaintiff, § § § V. § AMERICAN ALLWASTE LLC AND § WASTEWATER TRANSPORT SERVICES, § Defendants. § | CIVIL ACTION NO. 1:23-CV-00508 JURY DEMAND |

## COMPLAINT

Plaintiff Edward Lopez brings this employment-discrimination suit against American AllWaste LLC and Wastewater Transport Services under federal law prohibiting discrimination in employment. Plaintiff alleges:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(4), 2201 and 2202, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, as amended, and 42 U.S.C § 1981.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

### II. INTRODUCTION

3. Wastewater Transport Services and its parent company American AllWaste LLC subjected Plaintiff to workplace segregation, unlawful terms and conditions of employment, retaliation, and constructive discharge.

4. Wastewater Transport Services supervisors assigned whites and Latinos to separate work teams and required Latinos to work more physically demanding roles.

5. After Plaintiff filed a complaint with human resources, Wastewater Transport Services retaliated against him through a reduction in his scheduled hours, which caused a dramatic decrease in his pay.

6. Wastewater Transport Services subjected Plaintiff to work conditions that ultimately forced him to announce that he was looking for other work, and Wastewater Transport Services then terminated his employment.

7. On August 19, 2021, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of race, national origin, and retaliation by Wastewater Transport Services.

8. On February 10, 2023, the EEOC issued a Notice of Right to Sue letter.

## III.
## PARTIES

**Plaintiff**

9. Plaintiff Edward Lopez is a Latino resident of Texas who worked for American AllWaste LLC and Wastewater Transport Services in Austin, Texas.

**Defendants**

10. American AllWaste LLC ("AllWaste") is a Delaware corporation.

11. AllWaste is a parent company of Wastewater Transport Services ("Wastewater").

12. Wastewater is a Texas corporation.

13. AllWaste is registered to do business as Wastewater in Texas.

14. AllWaste is and has been an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b). AllWaste has at least 15 employees in Houston,

Austin, and Beaumont, Texas, as well as Nashville, Memphis, Chattanooga and Knoxville, Tennessee.

15. Wastewater is and has been an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b). Wastewater has over 40 employees in its Austin, Texas location.

16. Collectively, Wastewater and AllWaste share policies and procedures that make them an integrated enterprise ("the Company") and joint employers within the meaning of Title VII of the Civil Rights Act of 1964.

17. Wastewater and AllWaste share an interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control that make them an integrated enterprise and joint employers within the meaning of Title VII of the Civil Rights Act of 1964.

IX.
FACTUAL ALLEGATIONS

18. AllWaste specializes in non-hazardous liquid waste transportation and disposal, as well as sewer infrastructure cleaning and inspection.

19. In 2018, AllWaste acquired Wastewater, which specializes in municipal sludge hauling, as well as grease trap and lint trap cleaning and maintenance in Austin, Beaumont, and Houston, Texas. Wastewater has been in business for over 30 years.

20. The bulk of Wastewater's operations are carried out by two separate teams: the vactor crew and the Class A tanker drivers.

21. The vactor crew's job primarily involves vacuuming sewage from neighborhoods throughout the greater Austin area.

22. The Class A tanker driver job involves driving an 18-wheel truck and operating the truck's suction capabilities to collect and haul away liquid waste.

**Channeling and Segregation**

23. The Company discriminated against Plaintiff on the basis of national origin and ethnicity in hiring and segregating Plaintiff to the vactor crew.

24. In January 2021, Plaintiff applied for a "Class A" tanker driver position with Wastewater. Plaintiff had 15 years' experience as a licensed commercial driver and was qualified for the position.

25. Plaintiff passed a driving test in the Class A tanker truck with AllWaste Vice President Cary Juby and interviewed with Wastewater supervisors. During the interview, Wastewater supervisors informed Plaintiff that every new employee in the company had to cross-train on the vactor crew before beginning the Class A tanker driver position. Plaintiff agreed to cross-train on the vactor crew before beginning his role as a Class A tanker driver.

26. Latinos make up the vast majority of the vactor crew workers at Wastewater.

27. After two weeks of cross-training, Plaintiff discussed beginning the Class A tanker driver role with Wastewater supervisors.

28. Wastewater supervisors advised Plaintiff that the company was leaving Plaintiff on the vactor crew because he "was doing so well." When Plaintiff objected and stated he was not hired for the vactor crew, a Wastewater supervisor replied, "Well you shouldn't have taken the job."

29. Wastewater did not transfer Plaintiff into the Class A tanker driver position, and instead hired two new Class A tanker drivers who did not have to complete the two-week cross

training on the vactor crew as Wastewater had represented to Plaintiff. The two new Class A tanker drivers are white.

30. Whites make up the vast majority of the Class A tanker drivers at Wastewater.

**Dirty and Dangerous Working Conditions**

31. The Company imposed dirty and dangerous working conditions on Plaintiff and the majority of Latino employees.

32. The vactor crew's job primarily involves vacuuming sewage from lift stations at neighborhoods throughout the greater Austin area. A lift station is the area where a neighborhood's sewage collects.

33. Crewmembers assemble smaller metal tubes into one long tube to drop into the lift station hole. The assembled tube can weigh between 250 and 480 pounds.

34. The tube is then connected to a hose from the vactor truck for suction while another crewmember uses a long and heavy high-pressure water hose to force down sewage from the sides of the lift station hole so the tube can vacuum the sewage.

35. Wastewater does not provide safety harnesses or other safety equipment to prevent crewmembers from falling into the lift station hole.

36. The sizes of lift stations vary, so some collections take two hours while others take four or more hours. The vactor crew has to empty and clean between four to eight lift stations a day.

37. It is physically demanding, dirty and dangerous work.

38. Plaintiff performed the tasks of a vactor crewmember, including assembling and disassembling the tube, vacuuming sewage, and driving the vactor truck.

39. The Class A tanker driver job is less physically demanding because the 18-wheel truck used by a Class A tanker driver has a pump and an air tank to collect the liquid, which requires substantially less exertion by the Class A tanker driver.

**Unequal Compensation**

40. The Company paid Plaintiff less than similarly-situated white employees with commercial driver's licenses.

41. Wastewater did not allow Plaintiff to begin the Class A tanker driver position for which he was hired and instead required Plaintiff to work on the vactor crew for nearly two months.

42. Wastewater paid Plaintiff $20 an hour.

43. Wastewater subsequently hired two whites into Class A tanker driver positions and paid them more than Plaintiff even though Plaintiff had more years of commercial driving experience and licensure.

44. All Wastewater employees are paid an hourly rate, but Class A tanker drivers can earn additional pay through overtime and commissions for emergency jobs, which frequently arise.

45. Wastewater paid vactor crewmembers with Class A commercial licensure less than Class A tanker drivers.

**Retaliation and Discharge**

46. The Company retaliated against Plaintiff when he complained about Wastewater's discriminatory policies and practices.

47. On March 12, 2021, after working on the vactor crew for over a month, Plaintiff filed a complaint with Wastewater's human resources department.

48. In the complaint, Plaintiff stated that Wastewater hired him as a Class A tanker driver, but Wastewater supervisors told him that everyone new in the Company had to cross-train on the vactor trucks. Plaintiff also stated that he observed that all the harder, manual labor jobs were filled by Latinos, and that the recent white hires to the Company did not complete the two-week cross-training period on the vactor crew.

49. Following his initial complaint to human resources, Plaintiff began to receive fewer assigned hours, which substantially decreased his weekly pay. Initially, Wastewater assigned Plaintiff up to 60 hours of work per week. Immediately after he complained, the Company reduced his hours to 30-35 hours a week on average.  One week, he worked as few as 28 hours.

50. On March 31, a Wastewater supervisor summoned Plaintiff to the office for a meeting. At the meeting, Plaintiff shared that he was looking for another position. A Wastewater supervisor stated that the Company was firing Plaintiff immediately and did not give him a reason for his termination.

## X.
## FIRST CLAIM FOR RELIEF

(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*., as amended)

51. Plaintiff incorporates Paragraphs 1 through 50.

52. The foregoing conduct by American AllWaste and Wastewater Transport Services constitute  unlawful employment policies and procedures, including disparate treatment and retaliation, all of which violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*., as amended.

53. Plaintiff has exhausted his administrative remedies and fulfilled all conditions precedent to filing suit. See Attached Exhibit A.

54. Plaintiff requests relief as hereinafter provided.

## XI.
## SECOND CLAIM FOR RELIEF
(Civil Rights Act of 1866, 42 U.S.C.§ 1981)

55. Plaintiff incorporates Paragraphs 1 through 50.

56. The foregoing conduct violates the Civil Rights Act of 1866, 42 U.S.C. § 1981.

57. Plaintiff requests relief as hereinafter provided.

## PRAYER FOR RELIEF

58. Wherefore, Plaintiff requests the following relief:

59. A declaratory judgment that Defendants' conduct is unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C § 1981;

60. An award of damages for lost compensation and job benefits that Plaintiff would have received but for the Company's discrimination, and compensatory damages and exemplary/punitive damages;

61. An order enjoining Defendants from engaging in each of the proven discriminatory practices, including violations of Title VII and 42 U.S.C § 1981, and requiring the Company to institute and carry out policies, practices and programs that remedy the effects of the Company's past and present violations of these statutes;

62. Reasonable attorneys' fees and costs and expenses of suit;

63. Prejudgment interest; and

64. Such other further relief to which Plaintiff may show himself to be entitled.

Dated: May 5, 2023                         Respectfully submitted,

                                            /s/ *Fátima L. Menéndez*
                                           Fátima L. Menéndez

        State Bar No. 24090260
        Samantha Serna
        State Bar No. 24090888
        **MEXICAN AMERICAN LEGAL DEFENSE AND**
        **EDUCATIONAL FUND, INC.**
        110 Broadway, Ste. 300
        San Antonio, TX 78205
        Tel: (210) 224-5476
        Fax: (210) 224-5382
        fmenendez@maldef.org
        sserna@maldef.org